UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON BELANGER,

     Plaintiff,

vs.                                             Case No. 12-14516

SIMPLY BETTER MANAGEMENT               HON. AVERN COHN
CO., LLC,

     Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING
PLAINTIFF'S MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT (DOC. 19) AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 12)**

## I. INTRODUCTION

This is a contract/tort case. Plaintiff Brandon Belanger ("Belanger") is suing his

landlord, defendant Simply Better Management Co., LLC ("Defendant") claiming that he

was injured when he tripped and fell on his way to his vehicle from his apartment complex's

dumpster area due to a hole in the pavement abutting the curb. Belanger's complaint is

in two counts, framed by him as follows:

     Count I:       Statutory Covenant of Habitability

     Count II:      Negligence

Now before the Court is Belanger's motion for leave to file a first amended complaint (Doc.

19) and Defendant's motion for summary judgment (Doc. 12). The Court held a hearing

on the motions on July 17, 2013. For the reasons stated on the record at the July 17

hearing, Belanger's motion for leave to file a first amended complaint is GRANTED.

Belanger shall file the first amended complaint.  Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The reasons follow.

## II. BACKGROUND

Belanger moved to the Northville Woods apartment complex in Northville Township, Michigan in June of 2011 to be closer to his job.  (Doc. 12-4 at 5, Belanger Dep.).  The apartment complex is owned and managed by Defendant.

On October 4, 2011, at approximately 8:30 PM, Belanger walked from his apartment to the complex's dumpster to deposit his trash.  (*Id.* at 6–7).  After putting the trash in the dumpster, he walked to his automobile that was in the parking lot.  On his way to the automobile, he stepped in a "hole" in the ground and sustained injuries.  *See* Attached Exhibit A, Color Photographs of Hole.  Belanger did not notice the hole.

The event was described in more detail by Belanger at his deposition:

> Q:   Tell me in your own words what happened.
>
> A:   I was taking the trash to the dumpster and I turned from the dumpster to go to my truck that was parked in the parking lot.  I was – there was no walkway there, so I was walking on the side of the road to stay out of the street and that's when I stepped into the hole.
>
> Q:   Can you describe where this hole is?
>
> A:   It was in the blacktop next to the sewer grate next to the curb.
>
> Q:   And is it standard at Innsbrook for residents to take their trash to the dumpster?
>
> A:   Yes, it was.  Everybody took their trash to the dumpster.
>
> Q:   There aren't any garbage bins or dumpsters located within the units?

2

> A:    No, sir.
>
> Q:    Did you fall as a result of stepping into this hole?
>
> A:    Yes, I did.
>
> Q:    Did you injure yourself at all?
>
> A:    I injured my right knee and I had scrapes on my right hand from the ground.

(*Id.* at 6–7).

The "hole" in the ground that Belanger tripped in was described at his deposition as "[a] hole and some blacktop next to a sewer grate and a white curb."  (*Id.* at 7).

As Belanger explained at his deposition, he could not see the hole in the ground as he was walking to his vehicle:

> Q:    If you would have looked down would you have been able to see this hole in the ground?
>
> A:    No, I would not.
>
> Q:    Why not?
>
> A:    There was no light at all right around there and it's in the blacktop.
>
> Q:    And you've said it was completely dark, right?
>
> A:    Yeah, it was quite dark.

(Doc. 17-1 at 5, Belanger Dep.).

The hole was described by Defendant's maintenance supervisor, Jonathan McMillian, as a sinkhole caused by water deterioration:

> Q:    Do you have any knowledge as to how the hole would have worked its way in the pavement?
>
> A:    Water deterioration.

3

Q:     Okay.  Can you explain that to me?

A:     You've got water that goes through the drain system and it's built with a block catch basin inside and if the water eroded any of that and it collapsed in on itself then it would cause a sinkhole.

(Doc. 17-3 at 6, McMillian Dep.).

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The revised Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

4

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. DISCUSSION

Belanger claims that Defendant is liable for his injuries arising out of his fall on Defendant's premises.  Belanger's claim has two bases.  First, Belanger contends that Defendant violated certain statutory covenants contained in Mich. Comp. Laws § 554.139(1).  Second, Belanger says that Defendant was negligent in its failure to fix the hole in the ground prior to his fall or to otherwise warn tenants about the hole.

Defendant contends that Belanger has not proffered any evidence that creates a genuine issue of material fact as to any of his claims.  First, Defendant argues that Count I (breach of the statutory covenant of habitability) must be dismissed because Belanger has

5

not established that Defendant failed to maintain a "common area" of the apartment complex. Second, Defendant avers that Count II (negligence) is foreclosed by Michigan's open and obvious doctrine. The Court disagrees. The reasons follow.

## A. Count I – Breach of Statutory Covenant of Habitability

Michigan law provides a statutory contractual duty on landlords to keep their premises and common areas fit for their intended use, in reasonable repair, and in compliance with applicable health and safety laws. Mich. Comp. Laws § 554.139(1). These statutory duties are in addition to any protection provided by the common law, i.e. a typical negligence claim. *Hadden v. McDermitt Apartments, LLC*, 287 Mich. App. 124, 128 (2010) (citation omitted). The statute reads, in relevant part, "[i]n every lease or licence of residential premises, the lessor or licensor covenants:"

> (a) That the premises and all common areas are fit for the use intended by the parties.
>
> (b) To keep the premises in reasonable repair during the term of the lease or licence, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located. . . .

Mich. Comp. Laws § 554.139(1)(a)–(b). Further, the statute provides that "[t]he provisions of this section shall be liberally construed." Mich. Comp. Laws § 554.139(3).

Belanger argues that Defendant failed to (1) keep the premises and common areas fit for their intended use; (2) keep the premises in reasonable repair; and (3) comply with Northville Township ordinances.

Defendant disagrees with Belanger's interpretation of the statute. First, Defendant says that Mich. Comp. Laws § 554.139(1)(b), in its entirety, does not apply to this case given the Michigan Supreme Court's decision in *Allison v. AEW Capital Management,*

6

*L.L.P.*, 481 Mich. 419 (2008),[1] because Belanger fell in a "common area" of the premises. Thus, Defendant contends that the covenant for fitness, Mich. Comp. Laws § 554.139(1)(a), provides Belanger with his only available cause of action. However, Defendant says that it is not liable under Mich. Comp. Laws § 554.139(1)(a) because the roadway, although containing a hole, was fit for its intended primary purpose–the driving of cars. Second, Defendant says that, even if Belanger were to establish a violation of Mich. Comp. Laws § 554.139(1), he is limited to breach of contract remedies.

### 1. *Allison v. AEW Capital Management, L.L.P.*, 481 Mich. 419 (2008)

The Michigan Supreme Court's decision in *Allison* provides a helpful starting point. In *Allison*, the plaintiff tenant fractured his ankle when he fell on two inches of accumulated snow and ice in the parking lot of his apartment complex. 481 Mich. at 423. The plaintiff sued his landlord claiming negligence, and that the landlord breached covenants under Mich. Comp. Laws § 554.139(1) to keep the premises and common areas fit for their intended use, and to keep the premises in reasonable repair. *Id.* The court of appeals, applying Mich. Comp. Laws § 554.139(1)(a), determined that a parking lot is a common area, and "that one of a parking lot's intended uses entails persons walking on it." *Id.* at 424. Thus, the court of appeals concluded that a parking lot covered with ice is not fit for its intended purpose under Mich. Comp. Laws § 554.139(1)(a). *Id.*

The Michigan Supreme Court reversed. The Supreme Court began its analysis by defining "common areas" in Mich. Comp. Laws § 554.139(1)(a). *Id.* at 427. Because the term "common areas" is not defined in the statute, the Supreme Court turned to Black's

---

[1] A detailed discussion of *Allison* follows *supra*.

Law Dictionary, which defines "common areas" as: '"[i]n law of landlord-tenant, the portion of demised premises used in common by tenants over which landlord retains control (*e.g.* hallways, stairs) and hence for whose condition he is liable, as contrasted with areas of which tenant has exclusive possession."" *Id.* (quoting Black's Law Dictionary (6th ed.), p. 275) (bracket in original).  The Supreme Court, applying this definition, determined that a parking lot within a residential property constitutes a "common area" within the meaning of the statute because "it is accessed by two or more, or all, of the tenants and the lessor retains general control."  *Id.* at 428.

Having determined that the parking lot is a common area, the Supreme Court turned next to whether the landlord breached the covenant to keep the parking lot fit for its intended use by allowing a natural accumulation of snow and ice.  *Id.* at 429.  The Supreme Court held that the landlord did not.  First, the Supreme Court explained that the primary purpose of a parking lot is the storing of vehicles on the lot.  *Id.*  Thus, the Supreme Court reasoned that "[a] parking lot is generally considered suitable for the parking of vehicles as long as the tenants are able to park their vehicles in the lot and have reasonable access to their vehicles."  *Id.*  Because "there could not be reasonable differences of opinion regarding the fact that tenants were able to enter and exit the parking lot, to park their vehicles therein, and to access those vehicles," the Supreme Court found that the plaintiff did not establish "that tenants were unable to use the parking lot for its intended purpose." *Id.* at 430.

In addition, the Supreme Court took "issue with the suggestion of the [c]ourt of [a]ppeals that a tenant traversing a parking lot, for any reason, might be able to take advantage of the covenant for fitness for the uses intended."  *Id.*  Although a tenant "using

8

a common area for a purpose other than that for which the area is intended" would have a common law cause of action, the Supreme Court stated that he is not protected by the covenant for fitness. *Id.* at 430–31.

Next, the Supreme Court turned to the landlord's covenant to repair under Mich. Comp. Laws § 554.139(1)(b). In order to give meaning to the entire statute as a whole, the Supreme Court recognized that it "must distinguish the term 'common areas' [contained in Mich. Comp. Laws § 554.139(1)(a)'s covenant for fitness] from the term 'premises' [contained in Mich. Comp. Laws § 554.139(1)(b)'s covenant to make reasonable repairs]. . . ." *Id.* at 431. In so doing, the Supreme Court reasoned that the term "'premises' does not encompass 'common areas' and that the covenant to repair under Mich. Comp. Laws § 554.139(1)(b) does not apply to 'common areas.'" *Id.* at 432. The Supreme Court explained the distinction between the covenant of fitness and the covenant to repair:

> Because both covenants imposed by the statute apply to premises, and only the covenant for fitness applies to common areas, we can reasonably infer that the Legislature intended to place a less onerous burden on the lessor with regard to common areas. Keeping common areas fit for their intended use may well require a lessor to perform maintenance and repairs to those areas, but may conceivably require repairs less extensive than those required by the second covenant. For example, if the lessor has a duty to repair a parking lot under Mich. Comp. Laws § 554.139(1)(b), the lessor arguably may be required to fill a small pothole in the parking lot, even if that pothole did not affect the ability of the tenants to park in that lot. However, because the lessor does not have such a duty with regard to parking lots because they are common areas, the lessor would not necessarily be obligated to fill that pothole under the duties concerning fitness in Mich. Comp. Laws § 554.139(1)(a).

*Id.* at 433.

The Supreme Court in *Allison* did not discuss the landlord's covenant to comply with

9

applicable health and safety laws contained in the second clause of Mich. Comp. Laws §
554.139(1)(b).

### 2. Mich. Comp. Laws § 554.139(1)(a)

There is no genuine issue of material fact that Defendant did not breach the
covenant for fitness.[2]

As explained above, a landlord in a residential lease covenants that all common
areas are fit for their intended use.  Mich. Comp. Laws § 554.139(1)(a).  Belanger
concedes that the area where he fell is a "common area" under Mich. Comp. Laws §
554.139(1)(a) as interpreted by the Supreme Court in *Allison*.  However, Belanger says that
the hole was not located in the parking lot.  Defendant says the hole is in the roadway.
Regardless of where the hole is–roadway or parking lot–it is evident that it is in an area
intended for automobiles to come in and to go out of the parking lot, to and from the
apartment complex.  Accordingly, the intended purpose of the roadway where Belanger fell
is for automobiles to travel.  Reasonable minds cannot differ that the hole did not render
the roadway unfit for its intended purpose.

Nor can Belanger argue that, although not a primary purpose, another purpose of
the roadway is for tenants to walk to and from their apartments and the dumpster.
Belanger says that the dumpster is located in an area requiring tenants to traverse the road
because there is no sidewalk.  However, Michigan case law makes clear that a landlord

---

[2] Although Belanger's complaint alleges that the roadway was not fit for its intended
use, his response in opposition to Defendant's motion for summary judgment does not
address this argument.  Nevertheless, because Defendant devoted substantial
argument to this issue, and because the complaint alleges a violation of Mich. Comp.
Laws § 554.139(1)(a), the Court considers the issue.

covenants that common areas are fit for their *primary use*, not all conceivable uses.  The

court of appeals explained this distinction:

> Since different areas of an apartment complex may have different intended uses, whether there is a breach of the statute depends heavily on the primary intended use of the portion of the premises at issue.  The intended use of a sidewalk is for walking, while the intended [use] of a parking lot is primarily for parking vehicles.  Since the intended uses are different, a condition that renders a sidewalk unfit for use may not have the same effect on a parking lot.

*Solomon v. Blue Water Village East, LLC*, No. 291780, 2010 WL 2977334, at *3 (Mich. Ct.

App. July 29, 2010) (internal citations omitted).  The court of appeals again illustrated this

distinction in *Hadden v. McDermitt Apartments, LLC*, 287 Mich. App. 124, 132 (2010):

> Although this Court recognized that tenants must have reasonable access to their vehicles in a parking lot, i.e., they must be able to walk to the vehicles, tenants do not use a parking lot for its intended purpose merely by walking in the lot. Walking in a parking lot is secondary to the parking lot's primary use.

(internal citation omitted).

Even if Belanger could establish that walking to and from the dumpster and the

apartments was the primary intended use of the roadway, he has failed to proffer any

evidence that the roadway was not fit for such intended use.  At his deposition, Belanger

testified that tenants took their trash to the dumpster because trash bins were not otherwise

provided.  Thus, Belanger and the remainder of Defendant's tenants were all accessing the

dumpster without incident prior to, and after, his fall.  In *Allison*, the Supreme Court

reasoned that, "[t]he [c]ourt of [a]ppeals erred in concluding that, under the facts presented,

the parking lot in this case was unfit simply because it was covered in snow and ice."  481

Mich. at 430.  Likewise, assuming the primary purpose of the roadway is for tenants to walk

to and from their apartments and the dumpster, Belanger has failed to proffer sufficient evidence that the hole prevents the tenants from doing so.

For these reasons, summary judgment is granted in favor of Defendant on Belanger's claim under Mich. Comp. Laws § 554.139(1)(a).

### 3. Mich. Comp. Laws § 554.139(1)(b)

Next, Defendant says it is entitled to summary judgment on Belanger's claim under Mich. Comp. Laws § 554.139(1)(b). The Court disagrees. The Court concludes that there are genuine issues of material fact whether Defendant violated the covenant to comply with applicable health and safety laws in Mich. Comp. Laws § 554.139(1)(b).

To the extent that Belanger's claim under Mich. Comp. Laws § 554.139(1)(b) is premised on a violation of Defendant's covenant to make reasonable repairs,[3] his argument is foreclosed by the Supreme Court's decision in *Allison.* 481 Mich. at 435 ("We hold that the lessor's duty to repair under Mich. Comp. Laws § 554.139(1)(b) does not apply to common areas. . . .").

To the extent that Belanger's claim under Mich. Comp. Laws § 554.139(1)(b) is premised on a violation of Defendant's covenant to comply with applicable health and safety laws, however, material factual issues exist which prevent summary judgment.

The statute requires landlords to comply with health and safety laws both at the state and local levels of government where the premises are located. Here, the premises are located in Northville Township. Northville Township adopted the International Property Maintenance Code, 2009 edition, as published by the International Code Council (the

---

[3] Belanger does not argue this in his papers but makes this allegation in the complaint.

"IPMC").  (Doc. 17-7 at 3, Building Construction Ordinance).  Section 302.3 of the IPMC states:

> **Sidewalks and driveways.**  All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.

(Doc. 17-8 at 6, IPMC 2009 edition).

There are material factual issues regarding whether Defendant maintained the roadway where Belanger fell "free from hazardous conditions."  Defendant's maintenance supervisor testified at his deposition that the hole was caused by water deterioration near the sewer.  The hole did not appear suddenly; it slowly got bigger with time as the water deterioration worsened.  Further, drawing all reasonable inferences in favor of Belanger that the only way to dispose of trash is to walk to the dumpster, Defendant's agents should have known that tenants were walking to the dumpster using the roadway.  However, the apartment complex, as best as can be gleaned from the pictures provided by Defendant, does not have a sidewalk leading to the dumpster; tenants are required to walk across the roadway to access the dumpster.  The pictures also show that the hole is not easily observable.  Further, Belanger testified at his deposition that it was dark outside.  To a tenant walking to the dumpster from the apartments, it appears that the hole would not be observed because the sidewalk is elevated.  In addition, part of the hole is covered with grass, leaves, and other debris.  In sum, drawing all reasonable inferences in favor of Belanger, it is for the jury to decide whether the condition of the roadway which led to his fall was maintained by Defendant "free from hazardous conditions."

Defendant argues that the Court should not address this issue because the Michigan

13

Supreme Court in *Allison* held that Mich. Comp. Laws § 554.139(1)(b) does not apply to "common areas."  Defendant is mistaken.  The Supreme Court in *Allison* determined that the covenant in Mich. Comp. Laws § 554.139(1)(b) to make reasonable repairs to the premises did not apply to common areas.  However, the Supreme Court did not have occasion to consider whether Defendant's covenant to comply with local and state health and safety laws applies to common areas.  Reading the statute in a manner that the Court anticipates the Supreme Court would if faced with the same issue,[4] the Court finds that Defendant's covenant to comply with local and state health and safety laws applies to common areas.

A plain reading of the statute makes clear that a landlord's duty to comply with applicable health and safety laws is separate and distinct from the duty to keep the premises in reasonable repair.  Although both the covenant to make repairs and the covenant to comply with health and safety laws are contained in the same section of the statute, Mich. Comp. Laws § 554.139(1)(b), they are separated by a comma and the word "and."  The word "and" serves as a conjunction to separate the landlord's covenant to make reasonable repairs to the premises from the landlord's covenant to comply with applicable health and safety laws.  This evidences that the covenants are separate and distinct from one another.

This interpretation of the statute is consistent with the court of appeals' interpretation

---

[4] In diversity cases, this Court must apply the substantive law of Michigan, as the forum state, anticipating how the Michigan Supreme Court would rule in the case.  *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607–08 (6th Cir. 2012) (citations omitted).  If "the Michigan Supreme Court has not addressed the issue presented," the Court must "anticipate how [it] would rule in the case."  *Id.* (citing *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

14

of the statute shortly after it was enacted.  In *Rome v. Walker*, 38 Mich. App. 458, 461 (1972), when the court of appeals referenced the covenant to repair the premises and the covenant to comply with the health and safety laws, it referred to them as separate *covenants*.

Finally, reading the covenants together as one does not make logical sense.  Such a reading of the covenants would require landlords to comply with health and safety laws in all areas of the premises and not the common areas, where most tenants' safety is also critical.  Further, reading the covenants as one would render all state and local ordinances relating to common areas of an apartment building nugatory.

In sum, the Legislature did not intend the covenants contained in Mich. Comp. Laws § 554.139(1)(b) as one covenant.  Therefore, the covenant to comply with health and safety laws applies to common areas of an apartment building despite the Supreme Court's decision in *Allison*.  Belanger's claim under Mich. Comp. Laws § 554.139(1)(b) survives summary judgment.

### 4. Breach of Contract Cause of Action

Having determined that Belanger's claim under Mich. Comp. Laws § 554.139(1)(b) goes forward, there remains the question of how the issue will be framed at trial.  Belanger says that his claim is a tort claim.  The Court disagrees.

The Michigan Supreme Court in *Allison* explicitly stated that breach of the covenants in Mich. Comp. Laws § 554.139(1) provides a plaintiff with a contractual remedy:

> The statutory protection under Mich. Comp. Laws § 554.139(1) arises from the existence of a residential lease and consequently becomes a statutorily mandated term of such lease.  Therefore, a breach of the duty to maintain the premises under Mich. Comp. Laws § 554.139(1)(a) or (b)

15

would be construed as a breach of the terms of the lease
between the parties and any remedy under the statute would
consist exclusively of a contract remedy.

481 Mich. at 425–26.

At trial, Belanger's claim under Mich. Comp. Laws § 554.139(1)(b) will proceed

under a breach of contract theory. A determination of the remedies available to Belanger

if he prevails on his breach of contract claim at trial is not necessary to resolve the instant

motion.

## B. Count II – Negligence

In Count II, Belanger asserts a common law negligence claim. Defendant contends

that Michigan's open and obvious doctrine bars this claim.[5]

### 1. Open and Obvious Doctrine

Generally, a premises owner must exercise reasonable care to protect an invitee[6]

from an unreasonable risk of harm caused by a dangerous condition on the premises.

*Hoffner v. Lanctoe*, 492 Mich. 450, 460 (2012). An unreasonable risk of harm is one

"caused by a dangerous condition of the land that the landowner knows or should know the

invitees will not discover, realize or protect themselves against." *Bertrand v. Alan Ford,*

*Inc.*, 449 Mich. 606, 609 (1995) (citing *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich.

495, 499 (1988)). This duty does not, however, extend to dangerous conditions that are

---

[5] The open and obvious doctrine does not apply to Belanger's statutory claims under
Mich. Comp. Laws § 554.139(1). *Allison*, 481 Mich. at 425.

[6] The parties agree that Belanger was an invitee.

16

open and obvious. *Lugo v. Ameritech Corp*, 464 Mich. 512, 516 (2001).[7]  Indeed, "such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner*, 492 Mich. at 461.

An open and obvious condition is one that an average person of ordinary intelligence would be able to discover upon casual inspection. *Kennedy v. Great Atlantic & Pacific Tea Co.*, 274 Mich. App. 710, 713 (2007).  In other words, an open and obvious condition is one that is "so obvious that the invitee might reasonably be expected to discover [it]." *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 96 (1992).  Courts employ an objective standard, "calling for an examination of 'the objective nature of the condition of the premises at issue.'" *Hoffner*, 492 Mich. at 461.

Even if a condition is open and obvious, a premises possessor must protect invitees from the risk of harm "if special aspects of a condition make even an open and obvious risk unreasonably dangerous." *See Lugo*, 464 Mich. at 517.  The "special aspects" exception to the open and obvious doctrine is a narrow one. *Hoffner*, 492 Mich. at 462–63.  "A special aspect exists when the danger, although open and obvious, is unavoidable or imposes a 'uniquely high likelihood of harm or severity of harm.'" *Bragan*, 263 Mich. App. at 331–32; *see also Hoffner* 492 Mich. at 463.

If genuine issues of material fact exist as to the condition on the premises or whether a condition is open and obvious, a fact question exists to be determined by a jury. *Bragan*,

---

[7] "Michigan's open and obvious doctrine was initially based on the Restatement of Torts," which provided that "a premises possessor is not liable for harm caused by known or obvious dangers 'unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Bragan v. Symanzik*, 263 Mich. 324, 331 (2004) (citing Restatement Torts, 2d, § 343A, p. 218).  The Restatement approach, however, was replaced by the Michigan Supreme Court in *Lugo*.

263 Mich. App. at 337 (Murphy, P.J., concurring).

### 2. This Case

Here, genuine issues of material fact exist regarding the open and obvious nature

of the hole in the ground.  As explained above in Section IV.A.3, the pictures show that the

hole is covered with debris.  In addition, the apartment complex does not have a sidewalk

that leads to the dumpster.  Thus, tenants must walk in the road–like Belanger did in this

case–to get to the dumpster.  It is reasonable that a tenant who is walking to the dumpster

and staying close to the curb in order to avoid being in the middle of the road, while at the

same time looking out for vehicles in the road, may not notice the hole.  The hole is not like

a typical pothole in the road.  It is near the drain system abutting the curb.  Because of the

layout of the apartment complex–particularly the placement of the dumpster–and other

factual circumstances regarding the visibility of the hole, whether the hole is open and

obvious is a fact question for the jury to decide.  *See, e.g.*, *Knox v. Macy's Retail Holdings,*

*Inc.*, No. 12-13851, 2013 WL 2319339, at *4 (E.D. Mich. May 28, 2013) (reasoning that

placement of a price scanner in a department store in relation to layout of the store created

a fact issue of whether the scanner presented an open and obvious danger).

This result does not change by virtue that Belanger fell at night time.  That it

happened at night time is just one factor to consider when determining whether a hazard

is open and obvious.

Nor does the fact that Belanger could have carried a flashlight alter the Court's

analysis.  Defendant relies on two unpublished Michigan Court of Appeals decisions to

argue that Belanger should have carried a flashlight to see where he was going.  *See*

*Sablosky v. Train Station Motel, Inc.*, No. 260124, 2005 Mich. App. LEXIS 1371, at *6

(Mich. Ct. App. May 31, 2005) ("Even assuming that it was reasonable for plaintiff to walk to the bonfire area at  night, she could have effectively avoided the danger by taking a flashlight to illuminate the area where she walked."); *Marchetto v. Kiss*, No. 270772, 2007 Mich. App. LEXIS 7, at *4 (Mich. Ct. App. Jan. 4, 2007) ("Furthermore, individuals who work outside in the dark can easily ensure their own safety by carrying a flashlight.").  Whether Belanger could have carried a flashlight is an issue for the fact finder to determine when considering comparative fault.  In addition, the fact finder must consider whether carrying a flashlight in the circumstances of this case would have made a difference.

For these reasons, summary judgment based on the open and obvious doctrine is inappropriate.

SO ORDERED.

_____

 S/Avern Cohn                                           
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  July 18, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 18, 2013, by electronic and/or ordinary mail.

 S/Sakne Chami                                  
Case Manager, (313) 234-5160

19

# EXHIBIT A

October 5, 2011    1:30p

EXHIBIT
#4 BELANGER
3·22·13   @AP



October 5, 2011        1:30p



EXHIBIT
#5 BELANGER
3-22-13  BAP



October 5, 2011      1:30p

EXHIBIT
#6 BELANGER
3-22-13   BAP



October 5, 2011    1:30p

EXHIBIT
#7 BELANGER
3-22-13  BPP





October 5, 2011     1:30p

EXHIBIT

#8 BELANGER
3-22-12  RAP

000029



October 5, 2011

1:30p

EXHIBIT

#9 BEAMBER
3-22-13
BAP

000930



October 5, 2011  1:30p

#10 BEAUVER
3-33-13 DAP

EXHIBIT

31

October 5, 2011    1:30P

EXHIBIT

#11 BELANGER
3-22-13 RAP



October 5, 2011    2:50 p.    **EXHIBIT**    No spider web.

#12 BELANGER
3-22-13 BAP

030033

